52 F.3d 323
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos ORTIZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald WILLIAMS, a/k/a Deadeye, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arnold MURDOCK, a/k/a Putt, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael MOORE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adrian SCOTT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Turonn LEWIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frankie SANCHEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry JONES, a/k/a Kenneth Dixon, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Male LEWIS, a/k/a Doc, Defendant-Appellant.
 Nos. 93-5473, 93-5474, 93-5475, 93-5476, 93-5477, 93-5478,
 93-5488, 93-5504, 93-5505.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1995.
Decided April 21, 1995.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CR-92-301-S)
 Before WIDENER, WILKINS, and HAMILTON, Circuit Judges.
 
 
 1
 ARGUED: Antonio Gioia, Baltimore, MD; Harvey Greenberg, Towson, MD, for Appellants. Brent Jefferson Gurney, Assistant United States Attorney, Greenbelt, MD, for Appellee. ON BRIEF: Paul M. Weiss, Baltimore, MD, for Appellant Ortiz; William S. Little, STARK & LITTLE, Baltimore, MD, for Appellant Williams; Richard D. Paugh, Rockville, MD, for Appellant Moore; Linwood P. Hedgepeth, Baltimore, MD, for Appellant Turonn Lewis; Catherine Flynn, Luther C. West, WEST, FRAME & BARNSTEIN, Baltimore, MD, for Appellant Sanchez; David L. Zeiger, Baltimore, MD, for Appellant Jones; David P. Henninger, GLASS & HENNINGER, Towson, MD, for Appellant Male Lewis. Lynne A. Battaglia, United States Attorney, Baltimore, MD, for Appellee.
 
 
 2
 D.Md.
 
 
 3
 AFFIRMED.
 
 OPINION
 PER CURIAM:
 
 4
 Carlos Ortiz, Ronald Williams, Arnold Murdock, Michael Moore, Adrian Scott, Turonn Lewis, Frankie Sanchez, Henry Jones, and Male Lewis were convicted of conspiring to distribute and to possess with the intent to distribute heroin and fentanyl. See 21 U.S.C.A. Sec. 846 (West Supp.1994).[1] They appeal their convictions and sentences alleging numerous errors. We affirm.
 
 I.
 
 5
 Appellants were tried together on various charges arising out of their involvement in a Baltimore, Maryland conspiracy to distribute heroin and fentanyl. The investigation of Appellants began after an inquiry into another Baltimore drug distribution conspiracy led law enforcement officers to discover that Jones was supplying heroin to that group. Police ultimately obtained a number of authorizations for wiretaps on telephones linked to various Appellants. The information obtained from monitoring conversations on these telephones led law enforcement officers to intercept two shipments of drugs to the group, leading to two substantive counts of possession with the intent to distribute. The principal charge, however, was one of conspiracy of which all of the Appellants were convicted.
 
 
 6
 Seven of the Appellants received life sentences pursuant to a statutory mandatory minimum sentence, see 21 U.S.C.A. Sec. 841(b) (West Supp.1994), or pursuant to the sentencing guidelines, see United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1(a) (Nov.1992). The two remaining Appellants, Male Lewis and Michael Moore, received 292-month sentences.
 
 II.
 
 7
 Appellants principally contend that the district court applied an incorrect standard of review in assessing whether there was sufficient information to support the application for the wiretaps. Asserting that de novo review is appropriate, they claim that when so reviewed the information submitted is not sufficient to establish probable cause or the exhaustion of other normal investigative procedures. See 18 U.S.C.A. Sec. 2518(3) (West 1970 & Supp.1994). We reject this argument.
 
 
 8
 It is well settled that the judge to whom the application for a wiretap is made
 
 
 9
 is in the best position to determine if probable cause has been established in light of the circumstances as they appear at the time.... Great deference is normally paid to such a determination by the issuing judge, and our role is to determine whether the issuing court had a substantial basis for concluding that electronic surveillance would uncover evidence of wrongdoing.
 
 
 10
 United States v. DePew, 932 F.2d 324, 327 (4th Cir.), cert. denied, 502 U.S. 873 (1991). The district court reviewed the decision of the issuing judge to determine whether a substantial basis for the probable cause determination existed; thus, it did not err in failing to review the probable cause determination de novo. And, applying this appropriately deferential standard of review, we cannot conclude that the issuing judge lacked a substantial basis for concluding that the wiretaps would uncover evidence of wrongdoing.
 
 
 11
 The finding that alternative investigative techniques have failed or are unlikely to succeed without the requested wiretaps is reviewed for an abuse of discretion. United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir.1988). "[T]he showing of need is tested in a practical and common sense fashion and not in an overly restrictive manner that would unduly hamper the investigative powers of law enforcement agents." DePew, 932 F.2d at 327. The affidavit submitted in support of the request for the wiretaps set forth in detail the other investigative techniques that had been used or considered for use and why those techniques had proven or would likely be unsuccessful. Accordingly, we conclude that the issuing judge did not abuse his discretion in determining that "normal investigative procedures ha[d] been tried and ha[d] failed or reasonably appear[ed] to be unlikely to succeed if tried or [were] too dangerous." 18 U.S.C.A. Sec. 2518(3)(c).
 
 III.
 
 12
 In challenging their sentences, Appellants first maintain that the guidelines promulgated by the United States Sentencing Commission are unconstitutional because they undermine the integrity of the judiciary, and hence are violative of the separation-of-powers principle, and because the guidelines deny them due process in violation of the Fifth Amendment. Appellants essentially ask this court to hold that because greater experience with the guidelines since the Supreme Court decided Mistretta v. United States, 488 U.S. 361 (1989) (holding that the guidelines do not violate the separation-of-powers principle), and since this court decided United States v. Bolding, 876 F.2d 21 (4th Cir.1989) (holding that the guidelines do not deprive defendants of due process), has demonstrated that the guidelines embrace political judgments, this court should ignore these prior decisions. Of course, we may not ignore them and consequently reject this argument as frivolous.
 
 
 13
 In addition, Appellants argue that their sentences were disproportionate and therefore violate the Eighth Amendment. No proportionality review is appropriate for sentences less than life without the possibility of parole. United States v. Polk, 905 F.2d 54, 55 (4th Cir.), cert. denied, 498 U.S. 985 (1990). And, this court has indicated that a life sentence is not disproportionate to the conduct of " 'drug dealers [who] themselves sentence many individuals to a lifetime of addiction and dependency.' " United States v. D'Anjou, 16 F.3d 604, 613 (4th Cir.) (quoting United States v. Meirovitz, 918 F.2d 1376, 1381 (8th Cir.1990), cert. denied, 502 U.S. 829 (1991)), cert. denied, 114 S.Ct. 2754 (1994); see also Harmelin v. Michigan, 501 U.S. 957 (1991) (mandatory life sentence without possibility of parole for possession of 672 grams of cocaine did not violate the Eighth Amendment). Moreover, the activities engaged in by the conspiracy also led to the deaths of numerous individuals who ingested fentanyl distributed by Appellants. Accordingly, we conclude that the life sentences are not disproportionate.
 
 
 14
 The Appellants who received life sentences next contend that the district court erred in concluding that mandatory minimum life sentences were required under 21 U.S.C.A. Sec. 841(b)(1)(A) and that a base offense level of 43 or 38 was indicated by U.S.S.G. Sec. 2D1.1(a)(1)-(2).[2] Appellants' sole argument is that the district court was required to find that it was reasonably foreseeable to each of them that death would result from their activities. They do not claim that the finding of the district court that the fentanyl distributed by the conspiracy caused numerous deaths in the Baltimore area was clearly erroneous. Nor do they dispute the finding of the district court that the distribution of fentanyl by members of the conspiracy was within the scope of their agreements and reasonably foreseeable to them. Instead, Appellants exclusively maintain that the district court erred in applying the statutory mandatory minimum sentence and/or Sec. 2D1.1(a)(1)-(2) because the district court did not find that the resulting deaths were reasonably foreseeable to them.
 
 
 15
 Appellants' argument has recently been rejected by this court in United States v. Patterson, 38 F.3d 139, 144-46 (4th Cir.1994), petition for cert. filed, No. 94-7831 (U.S. Jan. 23, 1995). Patterson held that the plain language of Sec. 841(b) does not require that the district court find that death which resulted from the distribution was reasonably foreseeable to the defendant. Id. Further, in the context of a conspiracy conviction, the district court must find only that the conduct that led to the death, i.e., the distribution of the illegal drugs that caused the death, was reasonably foreseeable--not that the resulting death itself was reasonably foreseeable. Id.
 
 
 16
 The references to Sec. 841(b) in Sec. 2D1.1(a) make plain that this guideline merely incorporates the standard applicable under Sec. 841(b) into the guideline framework; thus, a finding that death resulted from conduct that was within the scope of the agreement and was reasonably foreseeable to the individual conspirators is sufficient to render Sec. 2D1.1(a)(1)-(2) applicable, assuming of course that the other provisions of the guideline are satisfied. Consequently, we find Appellants' argument concerning the application of these provisions lacks merit.
 
 IV.
 
 17
 We have considered each of the remaining arguments raised by Appellants and find them to be without merit. Accordingly, we affirm their convictions and sentences.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Various Appellants were also convicted of substantive charges of possession with the intent to distribute. See 21 U.S.C.A. Sec. 841(a) (West 1981)
 
 
 [2]
 A district court is required to impose a mandatory minimum life sentence under Sec. 841(b)(1)(A) when certain prescribed quantities of drugs are involved in the offense and the defendant commits the present offense "after a prior conviction for a felony drug offense has become final, ... and ... death or serious bodily injury results from the use of such substance." Section 2D1.1(a)(1) provides that a defendant should be assigned a base offense level of 43 when the penalty provisions of Sec. 841(b)(1)(A) are applicable and "death or serious bodily injury resulted from the use of the substance and ... the defendant committed the offense after one or more prior convictions for a similar offense." Section 2D1.1(a)(2) provides that a defendant should be assigned a base offense level of 38 when the penalty provisions of Sec. 841(b)(1)(A) are applicable and "death or serious bodily injury resulted from the use of the substance."